IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO.  2:05cr37-A |
| | ) | |
| ERIC WALTER HOWARD | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Eric Walter Howard ("Howard"), was charged on February 9, 2005, in a two-count indictment with knowingly and intentionally possessing with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1).  On March 17, 2005, Howard filed a motion, premised upon the Fourth Amendment to the United States Constitution, to suppress all "items seized and statements obtained as a result of a police stop and search of the car driven by defendant Eric Howard on or about January 13, 2005." *See* Doc. # 23.  Claiming that the traffic stop was pretextual, Howard alleges that the traffic stop was improperly extended beyond the duration necessary to complete the stop, and the officer's request to search his vehicle was unsupported by probable cause.  Consequently, Howard contends that his consent was coerced and not the product of a consensual encounter.

On July 15, 2005, the Court held an evidentiary hearing on the suppression motion. For the reasons which follow, the Court concludes that the motion to suppress is due to be denied.

**FACTS**

On January 13, 2005, state trooper Bryan Hamrick ("Hamrick") was patrolling on Interstate 85 in Montgomery County, Alabama.  At approximately 9:30 p.m., Hamrick was parked in the emergency lane between mile markers 12 and 17, observing traffic coming over the ridge of a small hill, traveling northbound on I-85.  Hamrick watched as the defendant's 'dooley' truck[1] crested the hill while straddling the center lane.  Hamrick continued to watch the truck straddle the center line until the defendant passed him.  At that point, Hamrick went after the truck and pulled the defendant over around the 17 mile marker.

Hamrick approached the truck from the passenger side and requested Howard's driver's license and vehicle registration.  Howard handed Hamrick what Hamrick first thought was a driver's license while passenger Demari Jackson informed Hamrick that the truck belonged to his boss. Jackson explained that they did not have the registration but did have an insurance card, listing his boss as the owner of the truck.  When Hamrick returned to his patrol car to check Howard's license and the registration of the truck, Hamrick discovered that Howard had given him an identification card, not a driver's license.

Hamrick returned to the truck and asked Howard to step out of the vehicle and to sit in the front seat of the patrol car.[2]  A check of Howard's license revealed that it had been suspended or revoked in 1997.  Hamrick explained that he had initially thought to give Howard a warning citation for improper lane usage but now would have to cite him for

---

[1] Hamrick described the truck as a dooley or duelie - a truck with 2 extra tires in the back.

[2] Hamrick's vehicle was a canine unit, and as such, did not have a back seat.

driving on a suspended or revoked license.  Because Howard was driving on a revoked license, Hamrick explained to him the "Safe Street Act" which required him to tow the vehicle.  However, because it was late and raining, Hamrick informed Howard that he would allow one of the passengers to drive the vehicle home if one of them had a valid driver's license.

As Howard was signing the citations, Hamrick approached Jackson to explain the Safe Street Act to him.  Jackson gave Hamrick his license and Hamrick returned to his patrol car.  Hamrick returned to Howard his identification card, insurance card, and gave him the citations.  While Hamrick was waiting for the results of Jackson's license check, Hamrick asked Howard for consent to search the car.  Although Howard said the truck wasn't his, he gave consent to search.  Jackson also consented to a search of the truck.  Both Howard and Jackson signed a consent to search form.

At some point during the traffic stop, Hamrick was joined by Trooper Barnes and Trooper Sutton.[3]  The officers asked the two remaining passengers to get out of the truck and Hamrick began to search.  Hamrick opened the glove compartment to look for the air bag because, according to Hamrick, it is common practice for drug traffickers to remove the air bag and use the compartment to hide drugs.  Hamrick immediately noticed that he could not see the air bag but could see particle board covered with carpeting.  This indicated to Hamrick that an after-market compartment had been installed in the vehicle.  A subsequent

---

[3] Hamrick testified that these officers patrolled together and it was for officer safety that they came to the traffic stop.

3

search of the compartment uncovered cocaine.

## DISCUSSION

### A.  Validity of Traffic Stop

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810 (1996); *see also*, *United States v. Pruitt,* 174 F.3d 1215, 1217, fn. 1 (11th Cir. 1999) ("We agree that, because Pena was speeding, and a traffic violation had thus occurred, probable cause existed for the stop.[4]  Accordingly, the stop was reasonable for purposes of the Fourth Amendment and withstands review.").  A police officer "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)).  In this case, Hamrick stopped the defendant's vehicle only after having probable cause to believe that the defendant had committed a traffic violation.[5]

---

[4]  Because the court concludes that the officer had probable cause to stop the vehicle, the court pretermits discussion of whether reasonable suspicion would have sufficed to support the traffic stop.  *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("Because a routine traffic stop is only a limited form or seizure, it is more analogous to an investigative detention than a custodial arrest. . . . Therefore, we analyze the legality of these stops under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).") (citations in original omitted).

[5]  To the extent that the defendant argues that he was targeted and the traffic stop was merely pretextual, he is entitled to no relief.  The defendant presented no evidence to support this contention.  Moreover, "an officer's motive in making a traffic stop does not invalidate what is otherwise "objectively justifiable behavior" under the Fourth Amendment."  The intent of the officer, actual or theoretical, is irrelevant to the determination of whether the traffic stop was valid.  *See United States v. Holloman*, 113 F.3d

Section 32-5A-88 of the Code of Alabama mandates that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver first ascertained that such movement can be made with safety." ALA. CODE § 32-5A-88 (1975). Hamrick testified that from where he sat on the side of the interstate, he could see the defendant's vehicle straddle the center line between two lanes of traffic. He watched the defendant's truck for approximately 150 to 200 yards during which time the truck continued to straddle the center line. The court concludes that a reasonable officer in Hamrick's position could have stopped the defendant's vehicle for improper lane usage, and, therefore, the officer had probable cause to stop the defendant. *See also United States v. Johnson*, 2005 WL 1412117 *2 (11th Cir. 2005) (fact that driver was swerving was sufficient justification to stop vehicle to insure that driver was neither drunk or sleeping); *United States v. Harris*, 928 F.2d 1113, 1116-17 (11th Cir. 1991) (same).

**B. Scope and Duration of the Traffic Stop**

Next, Howard asserts that the scope and duration of the traffic stop were unreasonable and unrelated to the traffic stop. After Hamrick lawfully detained Howard and the vehicle based upon the traffic violation, Hamrick was entitled to check registration and insurance information "including questioning the driver about the traffic violation, requesting consent

---

192, 194 (11th Cir. 1997). Furthermore, as the Supreme Court has said, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Thus, absent some evidence that the stop was pretextual, the defendant is entitled to no relief on this basis.

to search the vehicle *and* running a computer check for outstanding warrants." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999).  Hamrick's request to Howard that he exit the vehicle and sit in the patrol car does not render his actions unlawful.  *Pennsylvania v. Mimms,* 434 U.S. 106 (1977).  After lawfully stopping the defendant  and the vehicle based upon the traffic violation, Hamrick was entitled to "take reasonable actions, based upon the circumstances, to protect [himself] during investigative stops." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989*)*.

> It is well established that officers conducting a traffic stop may "take such steps as [are] reasonably necessary to protect their personal safety." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 331 (1985). This includes conducting a protective search of the driver, *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (177), the passengers, *id*., and the vehicle, *Michigan v. Long*, 463 U.S. 1032, 1049-51, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).   The officer may seize any contraband, including weapons, in plain view.  *Id*. at 1049, 103 S.Ct. 3469. The officer may use a flash light to illuminate a vehicle's dark interior.  *United States v. Dunn*, 480 U.S. 294, 305, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The officer may also prolong the detention to investigate the driver's license and the vehicle registration, *[Delaware v.] Prouse,* 440 U.S. 648, 657-59, 99 S.Ct. 1391 [1979], and may do so by requesting a computer check.  *United States v. Simmons,* 172 F.3d 775, 778 (11th Cir. 1999); *Pruitt,* 174 F.3d at 1219.

*United States v. Purcell*, 236 F.3d 1274, 1277-78 (11th Cir. 2001).

Howard argues the actions of Hamrick were coercive because he was separated from the other passengers in the truck and then asked to sit in the front seat of the patrol car.  The totality of the circumstances show otherwise.  It is correct that the police can be said to have seized an individual if, in view of all the surrounding circumstances, a reasonable person

6

would believe that he was not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). However, a *Terry* investigatory stop is not an arrest merely because a reasonable person would not feel free to leave. *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). If every seizure were an arrest, *Terry* would be rendered meaningless. No bright line test separates an investigatory stop from an arrest. Instead, whether a seizure has become too intrusive to be an investigatory stop and constitutes an arrest depends on the degree of intrusion, considering all the circumstances. *United States v. Roper*, 702 F.2d 984, 985 (11th Cir. 1983). The factors to be considered by the court include "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000). This Circuit has determined "that the most important factor is whether the police detained [the defendant] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference." *Id.* (internal citation omitted). The mere fact that Hamrick placed Howard in the police car does not transform the investigatory stop into an arrest. *Blackman*, *supra* at 1576; *Hastamorir*, 881 F.2d at 1556; *United States v. Kapperman*, 764 F.2d 786, 791 (11th Cir. 1985).

Here, Hamrick stopped a vehicle whose driver had committed a traffic violation. When Hamrick asked Howard for his driver's license and registration, Howard gave him an identification card and an insurance card. When Hamrick discovered that Howard had given him an identification card instead of a driver's license, Hamrick asked Howard to get out of

the truck and sit in the patrol car so Hamrick could issue him a ticket for not having a driver's license.[6]  *See Hastamorir*, 881 F.2d at 1556.  Howard was not locked in the patrol car.

When Hamrick began checking on the status of Howard's license, Hamrick discovered that Howard's license was revoked or suspended.   Hamrick then began questioning Howard about the status of his license, his destination and his companions.   To the extent that Howard argues Hamrick should not have asked any questions not pertinent to the traffic stop, he is entitled to no relief on this basis.  "Mere questioning . . .  is neither a search nor a seizure."  *Purcell,* 236 F.3d at 1279.   In addition, it was reasonable for Hamrick to question Howard, particularly because Howard had no valid license, was driving an expensive truck that did not belong to him or any of the passengers, and he appeared nervous to Hamrick.[7]

Hamrick explained to Howard that he was going to give him a warning ticket for improper lane usage but had to give him a citation for driving on a revoked license.  Howard repeatedly asked Hamrick not to give him a ticket for driving on a revoked license because

---

[6]  In *Pennsylvania v. Mimms*, 434 U.S. 106 (1997), an officer directed a motorist stopped for a minor traffic violation to get out of his car, even though the officer had no reason to believe the motorist was dangerous or armed. The Court held that concern for the officer's safety outweighed the slight intrusion against the liberty of the motorist.  *Mimms,* 434 U.S. at 110-11.  It was reasonable therefore in this case for the officer to detain the defendant "in order to determine his identity or to maintain the status quo momentarily while obtaining more information . . . in light of the facts known him at the time."  *Kapperman*, 764 F.2d at 791-92

[7]  Howard sought through vigorous cross-examination to bring into question the validity of Hamrick's judgment regarding Howard's nervousness.  Hamrick has 12 years experience as a patrol officer and has made numerous traffic stops.  His opinion was that Howard was nervous.  His opinion was that Howard's responses were deceptive and given for the purpose of 'distancing' himself from the truck which contained contraband. The court finds, after considering the totality of the evidence, nothing to indicate that Hamrick's opinion and suspicions were based on anything other than legitimate indicators derived from the circumstances of the stop.

he was trying to get his license reinstated. Hamrick explained that he had no discretion in the matter. Because Howard did not have a valid driver's license, Hamrick explained the Safe Street Act which required Hamrick to tow the vehicle if the driver was driving on a revoked or suspended license. Nonetheless, Hamrick decided to allow one of the passengers to drive the truck home, if Hamrick could verify that the proposed driver had a valid license. While Hamrick had Howard sign the warning ticket and citation for driving on a revoked license, Hamrick spoke to passenger Demari Jackson about driving the truck home. As Hamrick ran Jackson's driver's license, he gave Howard back all his paperwork. These facts support the second factor that must be considered, "the diligence of the police in pursuing the investigation." *Id.* After securing the defendant, Hamrick promptly began investigating the status and owner of the vehicle as well as checking the identity of the driver of the vehicle. The court concludes that Hamrick was diligent in his investigation. He promptly ascertained that Howard did not have a valid driver's license. He then sought to verify that Jackson had a license before allowing Jackson to drive the truck. The third factor the court must consider is the "actual scope and intensity of the intrusion." *Gil*, 204 F.3d at 1351. The intrusion was minimal and reasonable under the circumstances. Howard was not handcuffed or locked in the patrol car. Finally, the duration of the detention did not render it unreasonable. According to the video tape of the arrest, Hamrick asked Howard to sign the warning ticket and citation after approximately 18 minutes.[8] The traffic stop was concluded

---

[8] Hamrick testified that the video camera activated when he turned on his blue lights. Consequently, the time on video tape is not from the beginning of the traffic stop but prior to Hamrick pulling Howard over.

in approximately less than 24 minutes.  Howard argues that the duration of the traffic stop was unreasonable because Howard's traffic stop was four times longer than any other stop that night.  The initial problem with this argument is that Howard presented no evidnece about the other traffic stops which would enable the court to make a valid comparison. Putting that difficulty aside, the facts show that the length of Howard's traffic stop was initially related to Hamrick's impression that Howard had a valid driver's license.  When Hamrick discovered that Howard had given him an identification card instead of a driver's license, Hamrick had to return to Howard for an explanation.  This action was not unreasonable.  In addition, once Hamrick ascertained that Howard did not have a valid driver's license, Hamrick then had to write a second citation and explain his actions to Howard.  The court concludes that Hamrick's actions did not unreasonably extend the traffic stop.  For the reasons as stated, the court concludes that the investigatory stop was reasonable under the circumstances and while the defendant was undisputedly detained, he was not under arrest.

### C.  Search Subsequent to Traffic Stop

After Hamrick completed the traffic stop, the defendant asserts that he did not have probable cause to ask for consent to search the car.  Therefore, according to the defendant, his consent was not valid.[9]  "An officer conducting a routine traffic stop may request consent

---

[9] The defendant also argues that his consent was the result of coercion.  No evidence was presented that would warrant a finding of coercion.

10

to search the vehicle." *Purcell*, 236 F.3d at 1281. "A consensual search is constitutional if it is voluntary; if it is the product of an "essentially free and unconstrained choice.""" *Id*. While Hamrick waited for results of the check on Jackson's license, Hamrick asked Howard for consent to search.[10] Within one minute of completing the traffic stop, but before Hamrick had run the computer check on Jackson's license, Hamrick asked for consent to search the truck. In this case, both Howard and Jackson gave consent to the search of the truck.

Thereafter, Hamrick began to search the vehicle and discovered an after-market compartment in the dashboard above the glove compartment. A subsequent search of the hidden compartment revealed powder cocaine. "A consensual search is manifestly reasonable so long as it remains within the scope of the consent." *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992). The court concludes that Howard and Jackson's consents to search, incident to a lawful traffic stop, were voluntary and not the product of any force or coercion. *See generally United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001).

## CONCLUSION

Accordingly, for the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motions to suppress be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **August 15, 2005**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general

---

[10] To the extent that Howard claims he could not give consent because the truck was not his, this argument avails him nothing. Howard was driving the vehicle and clearly in control of the truck when he was stopped.

objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2nd day of August, 2005.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

12